SIXTH DIVISION
June 2, 2006

No. 1-05-0751

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 01 CR 14628 |
| | ) | |
| TRAVIS WHITFIELD, | ) | The Honorable |
| | ) | Thomas M. Davy, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Following the vacation of his guilty plea and a bench trial, defendant Travis Whitfield (defendant) was convicted of possession of a stolen motor vehicle and sentenced as a Class X offender to eight years in prison. He appeals, contending that the trial court erred in not considering, as credit against the sentence it imposed, time he served under probation, and whether his mandatory Sheriff's Work Alternative Program (SWAP) time was creditable as well. He also contends that his mittimus must be corrected to reflect an additional one-day credit for time served prior to sentencing and to reflect the proper crime for which he was convicted. He asks that we correct the mittimus as requested and that we then remand the cause for a determination as to crediting with respect to his probation and SWAP time. For the following reasons, we remand and order certain corrections to the mittimus.

BACKGROUND

On May 9, 2001, defendant was arrested and charged with two counts of aggravated possession of a stolen motor vehicle, with the second count seeking an extended-term sentence

due to the victim's age. Defendant was released from custody on bond on May 14, 2001. On September 30, 2002, he entered into a plea agreement with the State. Pursuant to this, he pled guilty to one count of aggravated possession of a stolen motor vehicle and received two years' probation, with the mandatory completion of 30 days of SWAP by the end of the first year.

Soon thereafter, the State filed a motion to vacate the illegal sentence, having then discovered that defendant had prior convictions for possession of a stolen motor vehicle and residential burglary. Accordingly, the State argued that defendant should have been sentenced as a Class X offender, which would have made him ineligible for the probation he received under the plea agreement. In May 2003, defendant moved to vacate his guilty plea and for a new trial. The trial court granted defendant's motion in June 2003, and the cause proceeded to a bench trial.

At trial, the State reduced both counts to simple possession of a stolen motor vehicle, a Class 2 felony. The victim, Emmerline Clarkson, testified that her gray Lexus automobile went missing after defendant had completed electrical work at her apartment. Officer James Fiedler testified that while on patrol, he saw defendant driving Clarkson's car, which had been reported stolen; Officer Fiedler further testified that when he pulled defendant over, defendant confessed that he had copied Clarkson's keys and had taken the car without her knowledge.

Following the close of testimony, the trial court found defendant guilty and, due to his prior convictions, sentenced him as a Class X offender to eight years in prison. The issued mittimus stated that defendant was convicted of violating statute "625 ILCS 5/4-103.2(A)(7)(A)," a "Class 1" felony. It also credited him "0005 days" for "time actually served

No. 1-05-0751

in custody."

ANALYSIS

Defendant presents three main contentions for our review, all dealing with his sentence. First, he asserts that the trial court erred when it failed to consider giving him credit for time he served under probation prior to the vacation of his negotiated guilty plea, and whether his mandatory 30 days of SWAP were "custodial" and therefore creditable to his eight-year sentence as well. Second, he claims that the mittimus must be corrected to reflect credit for the amount of time he actually served prior to sentencing. Third, he insists that the mittimus must be further corrected to reflect the proper crime for which he was convicted and the proper class rank of that offense.

We begin by addressing defendant's second and third contentions, which the State has conceded in its brief on appeal. As a threshold matter, therefore, we note that pursuant to Supreme Court Rule 615 (134 Ill. 2d R. 615), a reviewing court on appeal may correct the mittimus at any time, without remanding the cause to the trial court. See People v. Davis, 303 Ill. App. 3d 684, 688 (1999); People v. Mitchell, 234 Ill. App. 3d 912, 921 (1992); see also People v. Latona, 184 Ill. 2d 260, 278 (1998) (amendment to mittimus may take place at any time). Regarding the amount of credit for time served prior to sentencing, "[a] defendant held in custody for any part of the day should be given credit against his sentence for that day"; this includes the day he was taken into custody. People v. Smith, 258 Ill. App. 3d 261, 267 (1994). Defendant here points out that he was taken into custody by arrest on May 9, 2001, and was released on bond on May 14, 2001. He asserts, and rightly so, that this amounts to six days of

3

credit. The State agrees, conceding to these dates and to the conclusion that the mittimus, which states defendant is entitled to "0005 days" of credit "for time actually served in custody," should be changed to six days. As there is no dispute, we agree with the parties and order the correction of this portion of the mittimus to six days, thereby giving defendant an additional one-day credit toward his ultimate sentence for the time he served prior to sentencing. See 134 Ill. 2d R. 615.

Likewise, regarding the crime and class rank listed on the mittimus, defendant points out, again rightly so, that prior to trial, the State reduced the charges against him and notified the trial court that it was proceeding only on charges of simple possession of a stolen motor vehicle rather than the original charges of the crime in its aggravated form. Accordingly, defendant asserts that the mittimus' statement that he was convicted of "625 ILCS 5/4-103.2(A)(7)(A)," a "Class 1" felony, is incorrect. Again, the State agrees with defendant. Section 4-103.2 of the Illinois Vehicle Code describes aggravated offenses relating to motor vehicles, including aggravated possession of a stolen motor vehicle, and assigns them a Class 1 felony status. See 625 ILCS 5/4-103.2 (West 2000). Meanwhile, simple possession of a stolen motor vehicle is found in section 4-103, entitled "Offenses relating to motor vehicles," and is assigned a Class 2 felony status. See 625 ILCS 5/4-103 (West 2000). As the State concedes in its brief on appeal that it proceeded against defendant only for violations of the Class 2 offense of simple possession under section 4-103, we again exercise our amendment powers and order the correction of the mittimus to reflect this lesser crime, rather than a violation of a Class 1 felony under section 4-103.2. See 134 Ill. 2d R. 615; Latona, 184 Ill. 2d at 278.

With the disposal of these issues, what remains for our review is defendant's contention

that the trial court erred when it failed to consider giving him credit for time he served under probation prior to the vacation of his negotiated guilty plea, and whether his mandatory 30 days of SWAP were "custodial" and therefore creditable to his eight-year sentence as well.

Defendant is presenting an argument regarding two different types of time served: probation and SWAP. Dealing first with his claim surrounding his mandatory 30 days of SWAP, defendant asserts that we must remand his cause for a determination of whether this part of his sentence is considered "custodial" under the law and, thus, whether it may be credited to his ultimate sentence. He relies principally on the case of People v. Baltzer, 327 Ill. App. 3d 222 (2002), where a reviewing court held that the defendant was entitled to a good-behavior credit after finding that his sentence, which included mandatory SWAP, was not to be considered "periodic" since he was not, at any point, "released." Baltzer, 327 Ill. App. 3d at 229-30. Essentially, the Baltzer court concluded that the time the defendant had served in SWAP was custodial under the circumstances of that particular case. See Baltzer, 327 Ill. App. 3d at 230.

Whether the reasoning in Baltzer applies to the instant case as defendant contends, or whether it is distinguishable as the State insists, we find this to be irrelevant and beyond the scope of our review. While sentencing credits and SWAP conditions may raise an interesting issue, it is not one we must decide here. The record does not show that defendant reported for any of his days of SWAP before the plea deal which made them mandatory was nullified. That is, defendant provides us with no evidence that he actually served even a single day of SWAP. This makes the issue academic; without evidence that he served his SWAP time, there is no reason for us to consider whether served SWAP time can be considered "custodial" and, thus,

5

creditable against his sentence, nor is there any reason for us to order remand to the trial court for it to determine the same issue. This would have become ripe for our review (and possible remand to the court below) had defendant served time under this portion of the plea. But since he did not, we decline to address the merits of the argument. See, *e.g.*, People v. Mims, 204 Ill. App. 3d 87, 95-96 (1990) (where trial court reserved ruling as to whether State could use prior misdemeanor offenses against the defendant upon his cross-examination at trial, and where he did not even testify, issue raised regarding this was held to be merely academic and not ripe for review).

The issue is different, however, when we deal with defendant's sentence of probation. On September 30, 2002, pursuant to the negotiated guilty plea, defendant was placed on probation for two years. In June 2003, after the State discovered defendant was not eligible for probation due to his Class X offender status and after it moved the court to vacate the "illegal" sentence, the trial court granted defendant's motion to vacate his plea and proceed to trial. Accordingly, defendant served eight months of his probation sentence before it was nullified.

Defendant asserts that the trial court failed to consider whether he should have been given credit for this time served as against his ultimate sentence of eight years in prison. He claims a *de novo* standard of review is appropriate since the court did not use any discretion--he alleges it simply did not consider the issue at all. While acknowledging that there is no statutory provision governing his scenario, defendant points to two sections of the Unified Code of Corrections (Code). He relies first on section 5-8-7(b), arguing that a court must apply credit for all time spent in custody, and the trial court's failure to consider his eight months on probation

6

violated this section. See 730 ILCS 5/5-8-7(b) (West 2004). Then, he notes that section 5-6-4(h) directs a trial court to exercise discretion in resentencing a defendant who has violated probation ordered on the same crime, *i.e.*, to decide whether to apply (or "credit") the probation time served to the new sentence. See 730 ILCS 5/5-6-4(h) (West 2004). He analogizes this revocation-of-probation scenario to his own situation, arguing that he deserves the trial court's consideration of sentencing credit even more so than resentenced defendants because he did not violate his probation--it was the State that sought to change his sentence upon its own mistake.

For its part, the State on appeal argues that defendant has waived this issue for review because he did not file a written motion raising it following the sentence's imposition, and that the plain error doctrine does not save its review because the evidence was not closely balanced and a substantial right is not involved. The State then argues that even if the merits of defendant's contention are reviewed, the correct standard of review is abuse of discretion, the cause should not be remanded because the trial court properly sentenced him as a Class X offender, and section 5-6-4(h) of the Code is inapplicable since defendant did not violate his probation.

Regarding the State's claim of waiver, we note that defendant admits he did not object to the trial court's failure to give him any sort of credit at the time of his sentencing following trial, nor did he raise the issue in a postsentencing motion. See, *e.g.*, People v. Reed, 177 Ill. 2d 389 (1997) (a defendant must file written postsentencing motion to preserve sentencing issues for appellate review). Even so, however, we cannot completely agree with the State that he has entirely waived the instant issue for our review. This is because defendant is asserting that the

7

trial court failed to consider, in its discretion, time he served under the negotiated plea agreement as a credit. A sentence in conflict with a statutory guideline, such as a provision on sentencing credit, is void and may be challenged at any time. See People v. Roberson, 212 Ill. 2d 430, 440 (2004) (the defendant did not waive issue regarding sentencing credit through his failure to raise it earlier); see also People v. Whitmore, 313 Ill. App. 3d 117, 121 (2000) (because sentencing credit for time served is mandatory, claim of error in calculation of that credit cannot be waived, even if the defendant agrees with the trial court's erroneous award).

Moreover, defendant's claim of error focuses on the calculation of credit he may have been able to receive against his sentence pursuant to two statutes of the Code: section 5-6-4(h) and section 5-8-7(b). As we point out below, section 5-6-4(h)'s language is discretionary, whereas section 5-8-7(b) establishes a mandatory credit for time served. Compare 730 ILCS 5/5-6-4(h) (West 2004) with 730 ILCS 5/5-8-7(b) (West 2004). Review of a section 5-6-4(h) claim essentially asks us to conclude that the trial court abused its discretion by failing to grant sentencing relief this defendant, admittedly, never requested. See People v. Bacon, 225 Ill. App. 3d 795, 796 (1992). Therefore, defendant's failure to object or file a written postsentencing motion would likely forfeit the issue for review. See Bacon, 225 Ill. App. 3d at 796-97 (sentencing issue involving section 5-6-4(h) raised for first time on appeal and never brought before trial court when the defendant was sentenced is waived). However, review of a section 5-8-7(b) claim involves a determination of defendant's statutory *right* to credit for time served; thus, his failure to file a written postsentencing motion does not, as the State contends, forfeit the issue for our review. See People v. Dieu, 298 Ill. App. 3d 245, 249 (1998) (distinguishing

8

requirement for written motion because statutory right to credit for time served is mandatory under section 5-8-7; therefore, a claim regarding the trial court's determination of this right cannot be waived, even if postsentencing motion is not filed); see also People v. Woodard, 175 Ill. 2d 435, 457 (1997) (a defendant's statutory right to receive credit for time served under section 5-8-7 is mandatory and forfeiture rules do not apply).  Because defendant's contention on appeal here cites both of these statutory sections, we choose to review the underlying merits.[1] See, *e.g.*, Daniels v. Industrial Comm'n, 201 Ill. 2d 160, 172 (2002) (relaxing waiver rule since it does not limit appellate jurisdiction).

First, it is apparent to us that the State has entirely missed the mark of this cause; it does not address the primary issue here and instead devotes the majority of its appellate brief to

---

[1]Accordingly, we need not address defendant's assertions of plain error or ineffective assistance of counsel as a means to save review, nor the State's efforts to counter these assertions.

defendant's SWAP contention. Regarding probation, the State rests the bulk of its argument against remand on its belief that the trial court properly sentenced defendant as a Class X offender. Yet, defendant's eight-year prison sentence is not and has never been in dispute; defendant has not denied he is a Class X offender and does not challenged that portion of his sentence. Thus, the State has essentially provided no response to defendant's probation contention regarding sentencing credit other than to insist that section 5-6-4(h) of the Code is inapplicable since defendant did not violate his probation. However, there is much more to the situation presented here and, without a viable argument from the State, we are left on our own to examine the interaction between sections 5-8-7(b) and 5-6-4(h) and their applicability to defendant's unique situation. We have been placed in a precarious position as, after thorough research, we have found no sentencing statute or case law directly on point with what we are now faced.

Despite the similarity of the two statutory sections and the ease with which many confuse them, section 5-8-7(b) and section 5-6-4(h) are very different. Defendant is correct in stating that under section 5-8-7(b) of the Code, a trial court is required to apply credit to a prison sentence for all time spent in custody. That section states:

> "The offender shall be given credit on the determinate sentence or
> maximum term and the minimum period of imprisonment for time spent in
> custody as a result of the offense for which the sentence was imposed ***." 730
> ILCS 5/5-8-7(b) (West 2004).

Generally, the language of the section mandates that defendants receive credit for time served;

this section was meant to ensure that a defendant is never subjected to more total time in confinement for a particular offense than he could have received for the offense in the first instance. See Dieu, 298 Ill. App. 3d at 249; see also People v. Scheib, 76 Ill. 2d 244, 250-51 (1979). Specifically, however, this section applies to "time spent *in custody*." (Emphasis added.) 730 ILCS 5/5-8-7(b) (West 2004). That is, it applies when the time for which credit is sought was served in confinement. See People v. Gaurige, 168 Ill. App. 3d 855, 872 (1988); see also Scheib, 76 Ill. 2d at 251 (only time in actual confinement is credited); Dieu, 298 Ill. App. 3d at 249. As our supreme court stated, "section 5-8-7(b) requires only that the period during which a defendant is actually confined be credited to the sentence of imprisonment ultimately imposed for the offense." Scheib, 76 Ill. 2d at 251. The classic situation to which this section applies is when a defendant spends time in jail prior to trial (for whatever reason--inability to obtain bail or to furnish bail, etc.), and is then convicted and sentenced to time in prison. See, *e.g.*, Scheib, 76 Ill. 2d at 251-54. The time spent in jail prior to trial must be credited, pursuant to section 5-8-7(b), against the time the defendant is to serve as part of his sentence handed down after trial. See Scheib, 76 Ill. 2d at 251-54.

Unfortunately, defendant's situation here does not fit the parameters of section 5-8-7(b). Defendant did not spend time "in custody," *i.e.*, confinement, as required for that section to be applicable. Rather, he was on probation, and this cannot be equated to confinement; our supreme court has declared it to be a lesser form of restraint distinguishable from confinement as explicitly stated in section 5-8-7(b). See People v. Bogan, 185 Ill. App. 3d 129, 136 (1989) ("constraints of liberty imposed under *** probation *** cannot be equated to the constraints of

11

No. 1-05-0751

imprisonment"); see also <u>Scheib</u>, 76 Ill. 2d at 251 (only "actual confinement" applies under

section 5-8-7(b) and a defendant can only receive credit under this section for time "spent in

jail"); accord <u>Dieu</u>, 298 Ill. App. 3d at 249 (this section concerns service of "jail time" for an

offense); <u>Gaurige</u>, 168 Ill. App. 3d at 872 (time served on probation is not addressed by section

5-8-7(b)).  For all intents and purposes, then, it seems as if section 5-8-7(b) brings us no closer to

a conclusion here.

Section 5-6-4(h), like section 5-8-7(b), also deals with sentencing credit.  However, while

section 5-8-7(b) addresses time spent in custody or confinement, section 5-6-4(h) deals with

lesser restraints, namely, conditional discharge, supervision, and probation.  See <u>Scheib</u>, 76 Ill.

2d at 251; <u>Gaurige</u>, 168 Ill. App. 3d at 872 ("section 5-6-4(h) applies when the time for which

credit is sought *** was served *unconfined* on probation, conditional discharge or supervision,"

(emphasis in original), whereas section 5-8-7(b) applies to time served in confinement).

Yet, that is not the end of the story regarding section 5-6-4(h), especially when it comes

to its use by our trial courts and its applicability to the instant case.  It is not as simple in this

regard as section 5-8-7(b), which espouses mandatory credit toward sentencing.  In contrast,

section 5-6-4(h) has an intricate history.

Section 5-6-4(h) of the Code involves the violation, modification or revocation of

probation, conditional discharge or supervision.  Unlike section 5-8-7(b), the classic situation to

which section 5-6-4(h) applies is when a defendant receives probation for a crime and begins to

serve it, but then violates his probation, the court revokes it, and resentences him to time in

prison for the original crime.  See, *e.g.*, <u>Scheib</u>, 76 Ill. 2d at 251-54.  When initially enacted, this

12

section ordered mandatory credit for time served on probation as against the later jail sentence. See People v. Farmer, 176 Ill. App. 3d 436, 440 (1988); see also People v. Wilford, 54 Ill. App. 3d 706, 707 (1977); accord People v. Kaminski, 30 Ill. App. 3d 180, 185 (1975). In 1974, the section was amended to make credit for time spent on probation discretionary with our trial courts. See Wilford, 54 Ill. App. 3d at 707; see also Kaminski, 30 Ill. App. 3d at 185-86. At that time, the section read:

> " 'Time served on probation, conditional discharge or supervision shall be
> credited by the court against a sentence of imprisonment *** unless the court
> orders otherwise.' " Farmer, 176 Ill. App. 3d at 439, quoting Ill. Rev. Stat. 1985,
> ch. 38, par. 1005-6-4(h).

This gave our courts the ability to consider credit for probationary time served; it contemplated that a defendant would get credit for his probation against a later sentence for the same crime unless the trial court chose to deny it. See Farmer, 176 Ill. App. 3d at 441 (if court did not expressly deny credit or simply remained silent, the defendant was entitled to it under this version of section 5-6-4(h)); see also Gaurige, 168 Ill. App. 3d at 872 (under prior version of section, where trial court did not comment on time the defendant served unconfined on probation, but rather, remained silent on issue, the defendant was entitled to a credit because the court did not expressly deny it); see, *e.g.*, People v. Moaton, 182 Ill. App. 3d 161, 167 (1989).

In 1988, however, section 5-6-4(h) was amended--not in the fact that it was discretionary but, rather, in the manner in which a trial court's discretion was to be exercised. See Farmer, 176 Ill. App. 3d at 439-40; Gaurige, 168 Ill. App. 3d at 872 (Public Act 85-628, effective January 1,

13

1988, amended paragraph 1005-6-4(h)); People v. Thomas, 193 Ill. App. 3d 525, 528 (1990); see

also Bogan, 185 Ill. App. 3d at 136 (trial court has broad discretion in choosing to grant or refuse

credit for time served on probation). That version of the section, which is the current one found

in our Code today, states:

> "Time served on probation, conditional discharge or supervision shall *not* be
>
> credited by the court against a sentence of imprisonment *** unless the court
>
> orders otherwise." (Emphasis added.) 730 ILCS 5/5-6-4(h) (West 2004).

See also Farmer, 176 Ill. App. 3d at 439. Now, the section contemplates that a defendant will

usually be denied credit in relation to probation served; he will receive it only if the trial court

specifically decides to grant it. See Farmer, 176 Ill. App. 3d at 441 (if trial court does not

expressly grant credit for probation or if it remains silent in this regard, the defendant is not

entitled to credit under current form of section 5-6-4(h)); accord Thomas, 193 Ill. App. 3d at 528

(section now provides that credit for probation will not be given unless the trial court so orders).

This change in section 5-6-4(h) provides for an interesting observation. Prior to 1988,

when faced with a situation where a trial court during sentencing did not comment on probation

time a defendant served prior to sentencing upon revocation of that probation, our reviewing

courts held that he was entitled to it under this section. See Farmer, 176 Ill. App. 3d at 441

(these cases concluded that if a court wanted to deny credit for probation time, it should say so;

if it left it to inference or interpretation, silence was to be interpreted to mean credit would

apply); see, *e.g.*, Gaurige, 168 Ill. App. 3d at 872 (applying this reasoning to grant credit on

review); Thomas, 193 Ill. App. 3d at 528 (because trial court did not order denial of credit for

14

time served on probation, the defendant was entitled to it); Moaton, 182 Ill. App. 3d at 167 (same). Currently, however, our reviewing courts have made clear that along with the change in statutory language has come a change in the use of trial court discretion: "a court can exercise discretion in denying credit [for time spent on probation] without specifically stating that credit is denied." Farmer, 176 Ill. App. 3d at 441. This is because, under the new version of section 5-6-4(h), "if the [trial] court decides to grant credit for probation time, it should say so." Farmer, 176 Ill. App. 3d at 441.

To effectively illustrate this point, we highlight People v. Kauffman, 172 Ill. App. 3d 1040 (1988). In that case, the defendant argued on appeal that he must be given credit against a two-year period of incarceration for time he served on probation for the same crime prior to the revocation of his probation. He asserted that because the trial court did not discuss his probation period at his resentencing hearing, he was entitled to credit under section 5-6-4(h). Upon review of the record, the Kauffman court agreed that the trial court below had made no remarks regarding the time defendant had served on probation. The court noted that had defendant been sentenced prior to 1988 under the old version of the statute, it would be required to find for him on his claim. See Kauffman, 172 Ill. App. 3d at 1043. However, the court concluded that section 5-6-4(h) had changed. See Kauffman, 172 Ill. App. 3d at 1043. Accordingly, it held that, under the new language, "[t]he trial court's failure to comment about [a] defendant's probation means [the] defendant will not receive credit for that time." Kauffman, 172 Ill. App. 3d at 1043. The Kauffman court therefore affirmed the defendant's sentence as handed down by the trial court. See Kauffman, 172 Ill. App. 3d at 1043; see also Farmer, 176 Ill. App. 3d at 441

15

(with amendment, even though a defendant must be credited for time served incarcerated, he is not entitled under section 5-6-4(h) to credit for probation time upon revocation and resentencing if the trial court remains silent on the issue).

Reviewing the record in the instant case, particularly the transcript of the resentencing hearing following defendant's trial, we conclude, much like the court in <u>Kauffman</u>, that the trial court did not comment on the eight months of probation defendant served for the same crime for which he was later imprisoned. The trial court only mentioned it in a procedural sense when discussing how defendant's case ended up on its docket; it acknowledged that "a probationary sentence was imposed, but that sentence was vacated." It never stated for the record how much time defendant served on probation, or that it would specifically consider that time in fashioning the new prison sentence. Following the rules we have just outlined, it would appear that, pursuant to the current form of section 5-6-4(h), the court's silence regarding defendant's probationary time served means it chose in its discretion not to credit his jail sentence with that time; had the court wanted to afford him this credit, it would have said so. See <u>Farmer</u>, 176 Ill. App. 3d at 441; <u>Kauffman</u>, 172 Ill. App. 3d at 1043.

However, while we have made the history, amendment and interpretation of section 5-6-4(h) clear, we are obligated to point out that it, like section 5-8-7(b), really does not bring us to a certain answer here. At first glance, defendant's situation seemingly fits the classic scenario to which this section applies: he was on probation, he was resentenced to jail time, the trial court did not mention his probation time served at the sentencing hearing and, thus, under the current interpretation, this silence should be interpreted to mean he is not entitled to credit for his eight

months on probation.  The problem with this conclusion is that it is based on a faulty premise.

Technically, section 5-6-4(h) does not apply to defendant's situation because he never violated

his probation, nor was it modified or revoked.

According to the record before us, defendant was serving his two-year probation sentence

without any problems for eight months when the State realized it had made a mistake in offering

probation via the plea agreement due to his Class X offender status.  It was the State, then, that

moved the trial court to vacate the probation sentence as "illegal."  Once that motion was filed,

and upon the urgence of the trial court, defendant asked to withdraw his guilty plea and proceed

to trial.  Therefore, defendant's probation was never officially violated, revoked or modified; it

was vacated and his plea was withdrawn.  Accordingly, section 5-6-4(h), which deals with

probation credit *only* when a probation sentence has been violated by the offender or revoked or

modified by the trial court, is inapplicable here.  See, *e.g.*, 730 ILCS 5/5-6-4(h) (West 2004);

Scheib, 76 Ill. 2d at 251-54.

This leaves us without a clear answer to the issue defendant presents.  We are not

completely certain, from the transcript of the colloquy at the resentencing hearing, whether the

trial court exercised its discretion and considered crediting, in some form, the eight months

defendant spent on probation to his eight-year prison sentence (purposefully remaining silent on

the issue), or whether the trial court failed to employ any discretion in considering this time at all

(accidentally failing to remember he had served this time).  What we are certain of is that

defendant's unique situation does not fit any statutory or case law we can find.  Ultimately, the

truth is that, under section 5-8-7(b), if defendant had served any time in jail before his trial and

17

was then sentenced to eight years in prison, he would be in a better position than he is now because the trial court would have been required to give him credit for time served. Likewise, under section 5-6-4(h), if defendant had violated his probation and caused the trial court to revoke it, he would most likely be in a better position than he is now because we would be able to clearly interpret the trial court's remarks at his later sentencing hearing to determine whether credit would apply.

As it stands, however, defendant is in limbo. In our view, it is not fair that one who is placed in prison before trial receives mandatory credit (section 5-8-7(b)) for his later sentence while defendant here did nothing but follow the provisions of his probation and receives (perhaps) no consideration. Nor is it fair that defendant here be treated the same way as one who was trusted to be placed on probation but then violated it. This is not to say that we believe defendant is a model citizen or that the trial court below must grant him a credit. Simply put, we are hesitant in this particular situation in light of the trial court's brief colloquy at the sentencing hearing. We do make clear that all defendant asks, and all we will allow, is that the trial court examine his situation closely since it is so peculiar and since the mistaken parties here were the State and the trial court, not defendant, who does not fit into either sentencing statute we have discussed.

We are mindful of the legal principles set forth in People v. Arna, 168 Ill. 2d 107 (1995), and the facts of People v. Wade, 137 Ill. App. 3d 878 (1985), aff'd, 116 Ill. 2d 1 (1987). Indeed, Arna declares that a sentence that does not conform to a statutory requirement is void and may be corrected at any time. See Arna, 168 Ill. 2d at 113. In conjunction, Wade states that a

18

judgment is void where a court orders a lesser sentence than is mandated by statute. See <u>Wade</u>, 116 Ill. 2d at 6. Admittedly, <u>Wade</u> presents a scenario similar to defendant's here. In <u>Wade</u>, the defendant pled guilty pursuant to a negotiated plea agreement and was sentenced to three years' probation. After serving nine months of this sentence, his probation officer told the court that the defendant had previously been convicted of two other felonies, thereby making him ineligible for probation. The court vacated his sentence and the defendant withdrew his plea and underwent trial, whereupon he was convicted and sentenced to an extended term of nine years in prison. See 116 Ill. 2d at 4. The defendant appealed, contending that the trial court erroneously failed to credit him for the time he spent on probation when it imposed the nine-year prison sentence. The reviewing court affirmed, concluding that because the probationary sentence was void as the defendant was not eligible for it, it could not be said that he was entitled to credit for serving a portion of it. See <u>Wade</u>, 137 Ill. App. 3d at 882. Our state supreme court agreed, holding that the initial order granting the defendant a probationary sentence was void for lack of inherent power. See <u>Wade</u>, 116 Ill. 2d at 6.

We find no fault, *per se*, with <u>Arna</u> or <u>Wade</u> or the principles they espouse. In fact, we have already noted in our discussion above, and defendant himself clearly admits on appeal, that his initial sentence of two years' probation pursuant to the negotiated plea agreement was void because he was not eligible for it due to his prior convictions. But ultimately, this is, in our view, wholly irrelevant to the instant cause. <u>Arna</u>, and especially the dated and abbreviated decision issued in <u>Wade</u>, fail to recognize the vital conflict that is occurring; neither addresses the factual context of defendant's situation which is so bizarre when viewed in comparison with

19

our statutory law, and <u>Wade</u>, in particular, gives short thrift to the legal principles involved.

Essentially, it does not matter here that the original probationary sentence is void. Rather, what does matter is that, were we to simply affirm the decision below without remand for further consideration of defendant's final sentence, we would be creating, in effect, two classes of similarly situated defendants treated in vastly different manners. That is, under our statutory scheme as evident in section 5-6-4(h), a defendant originally placed on probation but who then violates its terms and requires the trial court to again become involved in his cause to impose a prison sentence has the potential opportunity to receive some consideration for his time spent on probation. Meanwhile, a defendant (in the same shoes as defendant here) originally placed on probation and who complies with every one of its terms, participates in the community without further police encounters or legal difficulties, and meets all other conditions for a period of time would receive absolutely no consideration at all, simply because his probation was later declared void rather than revoked.

This is inherently, not to mention fundamentally, unfair. Ultimately, we are encroaching upon due process rights. While <u>Arna</u> and <u>Wade</u> are good law, they do not fix, or even address, this problem and, thus, we do not find them to be binding in the particular case at hand. What we do find binding, however, is our duty to heed and uphold the basic principles of common sense and fundamental fairness in our legal system. See, *e.g.*, <u>People v. Garlick</u>, 46 Ill. App. 3d 216, 223 (1977). One who is placed on a probationary sentence by the State and a trial court and complies completely should not be treated differently than one who is placed there and violates it, simply because the former's sentence was later declared void rather than revoked. If anything,

20

he should actually be treated better instead of being made to fall prey to this dangerous game of labels and semantics. The fact that defendant here was within the ranks of our community without experiencing any further criminal or social problems and met all the conditions of his probation for over eight months is clearly mitigation in its purest form. We, and all the parties to this cause, realize that defendant is a Class X offender whose first day of well-deserved imprisonment was delayed by eight months--though we clearly note that this was through no conniving of his own. Erroneous probation or not, this does not change the fact that defendant abided by the sentence he was issued in all respects, nor does it change the reality that this time of restraint perhaps may not have been considered simply and solely because of the way our statutes are written. This presents a real problem. Due to the peculiarities of the instant case, defendant's time on probation should, at the very least, be considered by the trial court below in the name of fundamental fairness. Then, the final decision of whether to change defendant's eight-year prison sentence accordingly will be entirely within the province of that court within its discretion.

Therefore, in addition to correcting the mittimus as we stated earlier, we remand this cause to the trial court. Again, we are not ordering it to afford defendant any certain amount of credit, if at all. We only request that it study defendant's situation in relation to his claim and make clear, using its discretion, whether it chooses to grant or deny credit for the probation time served in relation to his prison sentence. After all, our reviewing courts have consistently noted that it would be the "better policy" for trial courts to specifically grant or deny credit for time spent on probation. See Farmer, 176 Ill. App. 3d at 441; Kauffman, 172 Ill. App. 3d at 1043.

21

We would not ask this of the trial court if defendant even remotely fit the mold of either section 5-8-7(b) or section 5-6-4(h). But since he does not, and since the mistake that occurred in this case fell squarely on the State (which did not adequately investigate defendant's background as it was required to do before offering a plea agreement), we believe remand is the most appropriate alternative, especially in light of the fact that defendant did nothing to violate his probation. Ultimately, we are seeking clarity on this peculiar issue, and we conclude that remand in this cause is the best option to meet this goal.

CONCLUSION

Accordingly, for all the foregoing reasons, we remand the judgment of the trial court, with directions to correct the mittimus as stated herein.

Remand; mittimus corrected.

McNULTY, P.J., concurs.

O'MALLEY, J., dissents.

Justice O'MALLEY dissenting:

I respectfully dissent from the majority opinion. Contrary to what the majority concludes, there is controlling authority in Illinois which governs this issue. In the case at bar, defendant originally received probation. However, because he was required to be sentenced as a Class X felon, he was ineligible for probation. Since there is no statutory authority allowing probation under these facts, the sentence was void from its inception. As a result, there is no reason to consider giving defendant credit against his current sentence based on a former

22

No. 1-05-0751

sentence that was void.  Furthermore, it is neither fundamentally unfair nor a violation of due process that the circuit court did not decide whether defendant was to receive credit for the void probation.  For the reasons that follow, in my view, the circuit court should be affirmed.

I agree with the majority on two findings: first, defendant's original sentence was "illegal" or void (see slip. op at 8, 16).  I further agree that neither section 5-6-4 (h) nor section 5-8-7(b) of the Unified Code of Corrections (730 ILCS 5/5-6-4(h), 5/5-8-7(b) (West 2002)) (the Code), which both deal with sentencing credit, applies under the circumstances of this case.  See slip op. at 16-17.  However, in spite of the absence of statutory authority to do so, the majority remands the case to the circuit court to clarify why it did not give defendant credit for probation, *i.e.*, whether it considered it and declined to do so, or whether it simply failed to consider it altogether.  This is a puzzling directive to the trial court because it seems to require the court to consider credit for probation pursuant to section  5-6-4(h) of the Code (relative to credit for lesser sentences than prison) after finding that section to be inapplicable.  Slip op. at 17, 21.

## I. CONTRARY LEGAL AUTHORITY

I do not agree that defendant's circumstances are "so bizarre" because the exact issue raised here has been addressed and decided both by this court and the Illinois Supreme Court in People v. Wade, 137 Ill. App. 3d 878 (1985), *aff'd*, 116 Ill. 2d 1 (1987).  The instant case presents a virtually identical situation to that of the defendant in Wade, 137 Ill. App. 3d at 882.  In Wade, defendant pleaded guilty to robbery as part of a negotiated plea agreement in which the parties stipulated that defendant had no prior convictions.  The defendant in that case was sentenced to time served and 36 months' probation.  Wade, 116 Ill. 2d at 4.  Nine months later,

23

however, the court was informed that defendant had been given probation in error because he had prior convictions that made him ineligible for probation. Wade, 116 Ill. 2d at 4. The circuit court held that its order sentencing defendant to probation was void because he was ineligible for probation due to those prior convictions. Wade, 116 Ill. 2d at 4. This court affirmed the circuit court, holding that it properly vacated the defendant's probation and that the defendant in that case was not entitled to credit for time served on probation because the sentence was void. Wade, 137 Ill. App. 3d at 882. The Illinois Supreme Court also affirmed, finding that the order granting defendant probation was void for lack of inherent power. Wade, 116 Ill. 2d at 4-7.

In the instant case, defendant mistakenly received a sentence of probation pursuant to a plea agreement even though he was subject to the mandatory Class X sentencing provision pursuant to section 5-5-3(c)(8) of the Code (730 ILCS 5/5-5-3(c)(8) (West 2002)) due to prior convictions. Therefore, as in Wade, his probation sentence was void. Wade, 116 Ill. 2d at 4; see also slip op. at 8, 16. A sentence that does not conform to a statutory requirement is void and may be corrected at any time. People v. Arna, 168 Ill. 2d 107, 113 (1995). A judgment is void where the court orders a lesser sentence than is mandated by statute. People v. Wade, 116 Ill. 2d 1, 6 (1987); People v. Young, 334 Ill. App. 3d 785, 789-90 (2002). A trial court, upon determination of guilt, has no authority to assess a fine or impose a sentence other than that provided by statute. People ex rel. Daley v. Suria, 112 Ill. 2d 26, 38 (1986); People ex rel. Carey v. Bentivenga, 83 Ill. 2d 537, 542 (1981); People ex rel. Ward v. Moran, 54 Ill. 2d 552, 556 (1973); People ex rel. Ward v. Salter, 28 Ill. 2d 612, 615 (1963).

This court and our supreme court have held that a void sentence is considered to have

24

never been imposed and that "[a] void sentence is treated as a complete nullity, without legal effect, since inception." People v. O'Neal, 281 Ill. App. 3d 602, 614 (1996), aff'd in part & rev'd in part by People v. Garcia, 179 Ill. 2d 55, 73 (1997) (holding that consideration of original sentence on remand for resentencing was inapplicable when original sentences were void). Although O'Neal and Garcia deal with different sections of the Code, the inescapable conclusion to be drawn form those cases is that a void sentence has no effect on a subsequent valid sentence. Garcia, 179 Ill. 2d at 73 (stating that a subsequent valid sentence "will not be greater than, less than or equal to [an] original [void] sentence[.]"). See also People v. Roth Inc., 412 Ill. 446, 450 (1952) (holding that "a void decree has no legal effect"). It seems obvious that, under these circumstances and absent contrary statutory authority, defendant is not entitled to receive credit for probation that he served pursuant to the void sentence. Wade, 137 Ill. App. 3d at 882.

The majority does not distinguish the facts in this case from the facts in Wade, except to say that the facts here are "so bizarre when viewed in comparison with our statutory law." Slip op. at 19. At The term "bizarre" is defined as "strikingly out of the ordinary; odd, extravagant, or eccentric in style or mode; involving sensational contrasts or incongruities." Merriam-Websters Collegiate Dictionary 118 (10th ed.). There can be nothing strikingly out of the ordinary about this case where an identical scenario appeared before this court and was affirmed by our supreme court in the past. Further, there is no meaningful distinction between this case and Wade, 137 Ill. App. 3d at 882. Defendant here and the defendant in Wade were improperly sentenced to probation and later properly sentenced to prison after a finding that the probation sentences were void. Both here and in Wade, it is undisputed that responsibility or fault for the mistaken

25

sentence fell upon the State. Slip op. at 21. Both defendants asked this court for credit against the subsequent valid sentence after fully complying with the terms and conditions of their void probation sentences. Finally, both defendants were free on probation when they should have been incarcerated. In my view, the facts of Wade and those of the instant case are identical in all ways cogent to the outcome. Therefore, the Wade decision cannot be characterized as "wholly irrelevant to the instant case." Slip op. at 19.

Further, the majority's decision creates a conflict with our own decision in Wade and improperly dispenses with relevant Illinois Supreme Court authority. Wade, 116 Ill. 2d 1; Wade, 137 Ill. App. 3d 878. It is well-established law in Illinois that an intermediate appellate court, such as ours, may not alter the law as pronounced by our state supreme court. Our supreme court stated:

> "[T]he nature of our court system requires that law established by this court's decision be followed when the question decided arises again before a court. If precedent is not judicially respected, the uniformity and stability of decision, which is essential to the proper administration of justice, will be destroyed." Rickey v. Chicago Transit Authority, 98 Ill. 2d 546, 551 (1983).

The Wade case is directly on point and is dispositive supreme court authority which this court is obliged to follow. See People v. Goebel, 284 Ill. App. 3d 618, 624 (1996) (acknowledging that "[w]e are obliged to follow the precedents of our supreme court").

## II. DUE PROCESS AND FUNDAMENTAL FAIRNESS

It is difficult to square the majority's holding with the facts of this case. Without citation

No. 1-05-0751

to authority or explanation, the majority states:

"Essentially, it does not matter here that the original probationary sentence is void. Rather, what does matter is that, were we to simply affirm the decision below without remand for further consideration of defendant's final sentence, we would be creating, in effect, two classes of similarly situated defendants treated in vastly different manners. That is, under our statutory scheme as evident in section 5-6-4(h), a defendant originally placed on probation but who then violates its terms and requires the trial court to again become involved in his case to impose a prison sentence has the potential opportunity to receive some consideration for his time spent on probation. Meanwhile, a defendant (in the same shoes as defendant here) originally placed on probation and who complies with every one of its terms, participates within the community without further police encounters or legal difficulties, and meets all other conditions for a period of time would receive absolutely no consideration at all, simply because his probation was later declared void rather than revoked.

This is inherently, not to mention fundamentally, unfair. Ultimately, we are encroaching upon due process rights." Slip op. at 19-20.

I do not believe that the outcome in the circuit court or a decision not to remand this case would be either fundamentally or inherently unfair or that such a result would infringe upon defendant's right to due process. The majority does not identify any constitutional or fundamental right to receive credit against a prison sentence for time served on probation nor does it explain whether defendant was deprived of procedural due process, substantive due

27

process or equal protection. The right to have a probation sentence credited against a subsequent prison sentence is purely a statutory one crafted entirely by the legislature and does not arise from constitutional principles or fundamental fairness. The majority does not explain, and I do not see, how due process rights were violated especially when defendant here was free on probation and all parties, including the majority, agree that he should have been imprisoned.

Additionally, contrary to what the majority concludes, defendant is not "similarly situated" to one who properly received probation and violated it. Slip op. at 19. A Class X felon, who can only receive imprisonment, cannot be compared to a lesser criminal offender who is eligible for probation, and thus, it cannot be said that defendant is treated in a "vastly different manner" or put in a worse position than one who was legally eligible for probation. Indeed, the inference to be drawn from these facts is that defendant was treated much better than similarly situated Class X felons because he received eight months of freedom when he should have been in jail.

Moreover, there is no evidence to support a suggestion that our supreme court has "failed to recognize the vital conflict" and did not "address the factual context of defendant's situation." Slip op. at 19. First, I do not believe any conflict exists. It appears as if the majority's quarrel is not with the Illinois Supreme Court's ability to recognize "the vital conflict," but with the legislature's failure to enact a statute that gives a defendant the opportunity to receive credit for a void sentence. Next, although I find it logical to presume that the reason why no such statute exists is because the legislature recognizes that a void sentence has no legal effect, it would be within the province of the legislature to craft such a provision, if it chose to do so, but wholly

No. 1-05-0751

improper for this court to undertake that responsibility.

The Majority cites to People v. Garlick, 46 Ill. App. 3d 216, 223 (1977), for the proposition that it "is our duty to heed an uphold the basic principles of common sense and fundamental fairness in our legal system." The Garlick case is a procedural due process case that deals with the constitutional right of a defendant not to be placed on trial while he is insane. Garlick, 46 Ill. App. 3d at 220 citing Pate v. Robinson, 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836 (1966). In Garlick this court held that it was "inherently unconstitutional to place the burden of proof on the defendant in a hearing to determine his fitness to stand trial." Garlick, 46 Ill. App. 3d at 223, citing People v. Bender, 20 Ill. 2d 45, 47 (1960). Although Garlick properly engages in a fundamental fairness analysis of rights that arise from the Constitution, it is wholly irrelevant to this case because it does not address the issues of void sentences and credit for probation against a subsequent prison sentence, which arise from statute, not the Constitution.

The majority condemns the "unfairness"of a result that allows a defendant who has violated his probation to potentially receive credit for some portion served while someone who has, in effect, "done everything right" may not. The majority, however, ignores the fact that defendant was neither mistreated nor dealt with unfairly, but was the fortuitous beneficiary of freedom to which he was not entitled. Simply put, a mistake occurred that resulted in eight additional months of freedom for defendant. The fact that he is not entitled to credit for the original void sentence does not implicate issues of fundamental fairness or due process. Defendant is not similarly situated to any defendant eligible for probation. Defendant is not entitled to be "treated better" than a defendant who receives and then violates his probation

29

No. 1-05-0751

because defendant here is a Class X felon. Moreover, it violates principles of common sense and is a waste of judicial resources to remand a case to the circuit court to decide whether a Class X felon should receive credit when the well-established Illinois Supreme and Appellate Court authority holds that he may not.

I, therefore, dissent.